IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ALBERT VICTOR ROMERO,

                    Plaintiff,

vs.                                                    Civ. No.  07-1120 JCH/RHS

ALBUQUERQUE PUBLIC SCHOOLS
POLICE DEPARTMENT, and STEVE
TELLEZ, in his individual capacity.

                    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendent Steve Tellez's *Motion for Summary Judgment on Qualified Immunity*, filed June 24, 2008 [Doc. 26].  The Court having considered the motion, briefs, and relevant law, and being otherwise fully informed, finds that Defendant Tellez's motion is well taken and should be GRANTED.

## BACKGROUND

Plaintiff A.V. Romero, a 61 year-old man at the time of the events leading to this action, joined the Albuquerque Public Schools ("APS") Police Department as a commissioned officer in August, 2003, upon his retirement from the Albuquerque Police Department.  His duties included, but were not limited to, criminal investigations, background investigations, and internal affairs investigations.  Plaintiff claims that he performed his duties without incident or complaint until January, 2007.

Early January, 2007, was a time of raw emotions and significant turmoil within the APS police department.  At that time, Gilbert Lovato ("Lovato") had been Chief of the APS police department for over 16 years.  On January 6, two days before the first incident giving rise to

Plaintiff's complaint, Lovato was placed on administrative leave pending the outcome of an Internal Audit probing allegations that he had misappropriated evidence from the evidence room, misused district resources, harrassed and intimidated certain employees, showed favoritism toward other employees, and engaged in an extramarital relationship with a fellow employee (who happened to be the wife of Plaintiff's new supervisor, Lt. Dave West).  Plaintiff claims that he believed that APS officers had sought to sabotage Lovato's employment through their allegations, and he forewarned Lovato that the allegations would be made against him. Defendant Tellez took over as Acting Chief of the department on the same day that Lovato was placed on administrative leave.  The next day, January 7, Defendant Tellez sent an email to all APS Police Department employees notifying them of APS Deputy Superintendent Tom Savage's order that, while the internal audit was ongoing, employees were not to discuss anything related to the audit with anyone.  *See* Doc. 38, Ex. P.  It was in this context that Plaintiff made the remarks and took the actions that set the stage for his claims.

Plaintiff's contentions, which the Court must accept as true for purposes of this motion, are as follows.  In a January 8 meeting with several department officers present, including Defendant Tellez, Plaintiff complained about the manner in which the media was being used to discredit Lovato and conveyed his support for Lovato.  After he made his comments, one of the officers became angry and physically threatened him, and Defendant Tellez did nothing to stop the outburst or to reprimand the officer.  The next day, during another meeting in which Plaintiff was advised that his former duties were being transferred to another officer under a new organizational chart, Plaintiff expressed his belief that the Department had no intention of returning Lovato to his employment with the APS Police Department.

On January 16, Defendant Tellez called Plaintiff at his residence to discuss the status of

the department's internal audit.  He stated that the primary reason for his call was to deny his involvement with incidents that had occurred with Lovato, and to inform Plaintiff of the investigatory measures that had taken place and the process that was expected to occur in the future.  On January 23, Plaintiff received a verbal reprimand from a Sergeant Sandoval for speaking about the Lovato investigation, in violation of Defendant Tellez's order.  Sergeant Sandoval did not identify any facts concerning the allegation, including who made the complaint and when the alleged violation occurred.  Plaintiff then complained to Sergeant Sandoval that Defendant Tellez had contacted Plaintiff a week earlier in violation of his own order.

On January 24, Plaintiff filed a discrimination complaint with APS's internal Office of Equal Opportunity Services, alleging that he was being retaliated against for engaging in a protected activity, although the complaint contained no specifics.  Doc. 38, Ex. A.

On January 26, Plaintiff sent an email directly to Defendant Tellez and Deputy Superintendent Savage complaining that internal auditors had left the door to the evidence room open and the room unattended, raising the risk that evidence could be tampered with or removed. On January 31, Plaintiff received a verbal reprimand from Sergeant Sandoval after Defendant Tellez sent Sergeant Sandoval an email questioning why Plaintiff had not followed the proper chain of command for sending such a complaint.  In addition to the verbal reprimand, Sergeant Sandoval swore at Plaintiff and said that if he wanted to complain about the evidence room, he would be placed in charge of maintaining it.  It is unclear from the complaint or the record how long Plaintiff was actually "in charge" of the evidence room.

Also on January 31, Defendant Tellez called Plaintiff and several other officers into a conference room to discuss alleged wrongdoing, such as "bad mouthing" supervisors, cellular phone abuse, and other work-related complaints.  Defendant Tellez also openly expressed his

dissatisfaction with Plaintiff's decision to file a discrimination complaint.  Later that day, Sergeant Sandoval called Plaintiff into his office and advised him that he would no longer be working four ten-hour days, but would instead be reassigned to a schedule of five eight-hour days.

On February 23, Sergeant Sandoval interviewed Plaintiff regarding an investigation being conducted regarding the possible misuse of the "Triple I" computer background check system.  This investigation was apparently spurred by an inquiry from the Bernalillo County Sheriff's Department ("BCSD") Communications Section, which maintained the system and which leased access to the system to APS.  As a result of an audit that BCSD was undergoing, several background checks requested by the APS police department were identified as questionable, meaning that they were conducted on people who were not the subject of ongoing criminal investigations.  At the end of the interview, Sergeant Sandoval stated "A.V., we are too old to be going through all this shit."[1]

On March 1, Detective Chris Romero went to Plaintiff's personal residence in an attempt to persuade him to resign from his position with the APS Police Department.  He told Plaintiff that any potential criminal charges stemming from the Triple I investigation would be dropped if he resigned, as directed by Defendant Tellez.

---

[1] This, and two other statements, in addition to alleged detrimental employment actions, form the basis of Plaintiff's age discrimination complaint.  Plaintiff also claims that on some occasion Defendant Tellez said of Plaintiff that he's "too old to be working here" and he's "an old fart."  In his filing with the E.E.O.C. in April, 2007, Plaintiff alleges that these statements were made, about him, to others.  *See* Doc. 38, Ex. I.  In his Statement of Material Facts in his Response to Defendant Tellez's motion for summary judgment and his Affidavit, Plaintiff claims that Defendant Tellez made the statements directly to him.  *See* Doc. 38 at 5, ¶ 17; Doc. 40 at ¶ 27.  Because Plaintiff has provided neither an approximate date that these statements were made, nor the context in which they were made, the Court has not included them in its chronology of events, but does acknowledge Plaintiff's contention that they were made.

On March 5, 2007, while the BCSD investigation was pending, Plaintiff was removed from his position in Investigations, and briefly assigned to patrol Rio Grande High School.  That same day, Sheriff Darren White of BCSD temporarily revoked Plaintiff's police commission. Because he did not have the commission necessary to perform standard police work, Plaintiff was assigned to the APS main office to clean the property room, beginning March 7.  *See* Plaintiff's Affidavit, Doc. 40 at ¶ 20.

On March 7, 2007, the APS police department conducted a formal Internal Affairs investigation regarding the alleged misuse of Triple I background checks.  The investigation reviewed the 130 Triple I background checks requested by the APS police department in the prior two years, and determined that eight of the checks had been improperly requested.  Of those eight, Plaintiff had requested seven.  Plaintiff was presented with the results of these findings in a written reprimand and directive dated April 21, 2007.  Both Plaintiff and Defendant Tellez signed the reprimand and directive.  The directive stated that Plaintiff was directed not to request Triple I checks on anyone for any reason and to attend a training class on the proper use of Triple I investigations.  *See* Doc. 38, Ex. M.  Plaintiff also signed a document attached to the directive that disputed the findings of the investigation and the context of the directive.  *See id*., Ex. M-2.  Plaintiff claims that Defendant Tellez promised to return him to work in Investigations if he signed the letter of reprimand.  Shortly thereafter, Plaintiff was returned to his previous position.

On April 15, 2007, Defendant Tellez sent a memorandum to Connie Levy, the Administrative Manager for APS Human Resources, detailing the results of the Internal Affairs Investigation against Plaintiff, and recommending his termination.  *See* Doc. 38, Ex. J.  The memorandum listed each of the Triple I background checks that had been determined to be

wrongly requested by Plaintiff and laid out the violations of federal law, state law, and

Department Standard Operating Procedures that resulted from the improper requests.  The

memorandum also gave Plaintiff's explanations for each unauthorized request, in some cases

stating that he claimed he must have been asked to run the checks by someone else, and in

another case stating that he could not recall why he asked to run the check.  Despite Defendant

Tellez's memorandum recommending termination, Plaintiff was never terminated and, as

discussed above, returned quickly to his previous position.

## LEGAL STANDARD

Special standards apply to the assessment of a summary judgment motion raising the

defense of qualified immunity.  *Hinton v. City of Elwood*, 997 F. 2d 774, 779 (10th Cir. 1993).

Qualified immunity protects governmental officials preforming discretionary functions from

liability for civil damages "insofar as their conduct does not violate clearly established statutory

or constitutional rights of which a reasonable person would have known."  *Gomes v. Wood*, 451

F.3d 1122, 1134 (10th Cir. 2006) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

When a defendant asserts a qualified immunity defense, the plaintiff bears the initial burden of

making two showings.  First, the Court must determine whether a plaintiff's allegations, if true,

establish a constitutional or statutory violation.  *Gomes*, 451 F.3d at 1134.   If the allegations,

taken in the light most favorable to the plaintiff, do not establish the violation of a constitutional

or statutory right, the Court must dismiss the claim.  *Id*.

If the allegations viewed in a light most favorable to the plaintiff demonstrate the

violation of a constitutional or statutory right, the Court must then examine "whether the law

was clearly established at the time the alleged violations occurred."  *Id.*  The law is considered

clearly established if a reasonable official in the defendant's circumstances would understand

6

that his conduct violated the plaintiff's constitutional or statutory rights. *Id.* For the law to be clearly established, thereby rendering a qualified immunity claim inapplicable, the law must have been developed in such a concrete and factually defined context to make it obvious to all reasonable governmental actors in the defendant's place that what the defendant is doing violates federal law. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The Tenth Circuit held that, in order for a plaintiff to show "that a law is clearly established, 'there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'" *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 516 (10th Cir. 1998). This is not to say that, for the law to be clearly established, prior cases must have involved precisely the same factual situation as the case at hand. Rather, "government officials must make 'reasonable applications of the prevailing law to their own circumstances,' and the 'can still be on notice that their conduct violates established law even in novel factual circumstances.'" *Gomes*, 451 F.3d at 1134 (internal citations omitted). If a plaintiff makes both required showings, the burden then shifts back to the defendant to make the usual showing required of defendants moving for summary judgment, namely that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. *See Hinton*, 997 F.2d at 779.

## DISCUSSION

This memorandum opinion and order only addresses Plaintiff's claims as they relate to Defendant Tellez in his individual capacity. In an order dated September 29, 2008 [Doc. 49], the Court granted a joint motion to dismiss, with prejudice, all claims against Defendant Tellez in his official capacity. In his Response to Defendant Tellez's motion for summary judgment,

7

Plaintiff stipulated that his claims for breach of contract and breach of implied covenant of good faith and fair dealing applied only to Defendant APS Police Department, and not to Defendant Tellez.  The remaining claims against Defendant Tellez are: (1) age discrimination in violation of the Age Discrimination in Employment Act; (2) unlawful retaliation in violation of Title VII and the New Mexico Human Rights Act; (3) violation of the Equal Protection Clause of the Fourteenth Amendment; (4) violation to Plaintiff's First Amendment right to free speech; (5) violation of Plaintiff's Due Process rights; and (6) violation of Plaintiff's First Amendment right to freedom of association.  The Court will take up each of these claims in turn.

     A.    <u>Age Discrimination</u>

     Plaintiff claims that Defendants violated the Age Discrimination in Employment Act ("ADEA") through the comments and adverse employment actions alleged.  However, to the extent that Plaintiff is bringing an ADEA claim against Defendant Tellez in his individual capacity, that claim must fail.

     The Tenth Circuit has already specifically held that suits under Title VII and the Americans with Disabilities Act ("ADA") against individuals in their personal capacities are inappropriate.  In *Sauers v. Salt Lake County*, the court held that "[u]nder Title VII, suits against individuals must proceed in their official capacity."  1 F.3d 1122, 1125 (10th Cir. 1993).  The *Sauers* court explained that "[t]he relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act," and that "the proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly." *Id.* (citing *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991)).  Later, in *Haynes v. Williams*, the Tenth Circuit held that "personal capacity suits against individual

supervisors are inappropriate under Title VII." 88 F.3d 898, 901 (10th Cir. 1996). In *Butler v.*

*City of Prairie Village*, the Tenth Circuit extended this reasoning to ADA suits, holding that

individual defendants named in their personal capacities may not be held liable for

discrimination or retaliation in violation of the ADA. 172 F.3d 736, 744 (10th Cir. 1999). The

*Butler* court explained that the "ADA, Title VII, and the ADEA all prohibit discrimination by

employers on a variety of grounds" and that the acts define "employer" similarly.[2] *Id.* Because

the court could "discern no meaningful distinction between the definitions of 'employer' in Title

VII and the ADA, the court concluded that the reasoning in *Haynes* dictated the outcome of th[e]

case." *Id.*        Based upon the Tenth Circuit's holding in *Sauers*, *Haynes*, and *Butler*, and the

similar definitions of "employer" in the statutes, the Court holds that individual capacity suits

are not tenable under the ADEA. *Cf. Smith v. Lomax*, 45 F.3d 402, 403 n.4 (11th Cir. 1995)

(individual defendants could not be held liable under the ADEA in their individual capacities

because they could not be considered plaintiff's employer) (citations omitted); *Birkbeck v.*

*Marvel Lighting Corp.*, 30 F.3d 507, 511 (4th Cir. 1994) (holding that the ADEA limits civil

liability to the employer, and not employees in their individual capacities, and that employees

acting as "agents" can only be held liable in their official capacities); *Miller v. Maxwell's Int'l,*

*Inc.*, 991 F.2d 583, 587-88 (9th Cir. 1993) (individual defendants cannot be held liable in their

individual capacities for damages under the ADEA); *Ledbetter v. City of Topeka*, 112 F. Supp.

2d 1239, 1244 (D. Kan. 2000) (under *Haynes* rational, individual supervisory liability not proper

---

[2] Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . any agent of such person." 42 U.S.C. § 2000e(B). The ADA defines "employer" as "a person engaged in an industry affecting commerce who has 15 or more employees . . . and any agent of such person." 42 U.S.C. § 12111(5)(A). The ADEA defines "employer" as "a person engaged in an industry affecting commerce who has twenty or more employees . . . [and] any agent of such person." 29 U.S.C. § 630(b).

under ADEA), *aff'd by* No. 02-3156, 2003 U.S. App. LEXIS 5364 (10th Cir. Mar. 18, 2003);

*Allen v. CGI Management, Inc.*, No. CIV-04-1068-M, 2005 WL 2429750, at *2 (W.D. Okla.

Sept. 30, 2005) (personal capacity suits inappropriate under ADEA).  Therefore, the Court

dismisses Plaintiff's ADEA claim against Defendant Tellez in his individual capacity.

   B. <u>Retaliation Claims</u>

   As discussed in the previous section, the Tenth Circuit has held that suits under Title VII

against individuals in their personal capacity are inappropriate.  *See Haynes v. Williams*, 88 F.3d

898, 901 (10th Cir. 1996); *Sauers v. Salt Lake County*, 1 F.3d 1122, 1125 (10th Cir. 1993).

Therefore, the retaliation claim against Defendant Tellez in his individual capacity brought under

Title VII is dismissed.

   Unlike Title VII, which precludes individual liability, the potential for an individual

liability claim does exist under the New Mexico Human Rights Act ("NMHRA").  In this case,

however, Plaintiff only named "APS/Police Dept." and not Defendant Tellez individually in his

EEOC complaint.  *See* Doc. 38, Ex. H.  By failing to name Defendant Tellez in his EEOC

complaint, Plaintiff failed to exhaust his administrative remedies with respect to Defendant

Tellez and his NMHRA claim against Defendant Tellez must fail.  *See Sonntag v. Shaw*, 130

N.M. 238, 243 (2001) (trial court erred in allowing NMHRA discrimination claim to be brought

against individual when only corporation was named in complaint to New Mexico Human

Rights Division); *Mitchell-Carr v. McLendon,* 127 N.M. 282, 284 (1999) (summary judgment on

NMHRA claims against individual was appropriate, because EEOC complaints only named

organization, not individual).  Therefore, the retaliation claim against Defendant Tellez in his

individual capacity brought under the NMHRA is dismissed.

   C. <u>Equal Protection under the Fourteenth Amendment</u>

The Court notes that, in his *Response to Defendant Tellez's Motion for Summary Judgment* [Doc. 38], Plaintiff abandoned his "class of one" equal protection theory but that he maintains his claim that Defendant Tellez violated his right to equal protection because of his age. *Id*. at 8.  However, Plaintiff's equal protection claim does not state a claim upon which relief can be granted.  Because the ADEA provides a comprehensive statutory scheme to address age discrimination in employment claims, such claims brought under § 1983 are preempted by the ADEA.  *See Migneault v. Peck*, 158 F. 3d 1131, 1140 (10th Cir. 1998), *vacated on other grounds sub nom. Bd. of Regents of Univ. of N.M. v. Migneault*, 528 U.S. 1110 (2000).  When the *Migneault* court revisited the remaining issue on which the case had been remanded, it also reaffirmed its prior holding that the plaintiff did "not have a cognizable age discrimination claim under the Equal Protection Clause, independent of the ADEA."  *Migneault v. Peck*, 204 F.3d 1003, 1004 n.1 (10th Cir. 2000).  Accordingly, Plaintiff's equal protection claim based on age discrimination is dismissed.

      D.    <u>Freedom of Speech under the First Amendment</u>

Under 42 U.S.C. § 1983, a public employer is prohibited from discharging or taking other adverse action against its employees on a basis that infringes on the employees' constitutionally protected interest in freedom of speech or expression.  A public employer is also prohibited from threatening to discharge or threatening to take other adverse action against its employees in an effort to chill the employees' rights under the First Amendment.  *See Rankin v. McPherson*, 483 U.S. 378, 383-84 (1987).

In analyzing Plaintiff's claim that his free speech rights were violated, the Court must determine: (1) whether Plaintiff's speech was protected, and (2) if the speech was protected,

whether the law regarding Plaintiff's speech was well established at the time of the alleged

violation.  *See Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1327 (10th Cir. 2007).

Plaintiff's brief uses the now-superceded test set forth in *Pickering v. Bd. of Educ.*, 391 U.S. 563,

568 (1968) to analyze the question of whether Plaintiff's speech was protected.  Under the

*Pickering* test, an employee had to show, as a threshold matter, that his speech involved a matter

of public concern.  The Supreme Court's decision in *Garcetti v. Ceballos*, 547 U.S. 410 (2006)

modified the *Pickering* test in a significant manner.  Under the *Garcetti* test, before reaching the

question of whether the speech at issue involved a matter of public concern, a Court must first

determine whether the public employee was speaking pursuant to his official duties, or was

speaking instead as a private  citizen.  *Id*. at 421.  When public employees speak "pursuant to

their official duties, the employees are not speaking as citizens for First Amendment purposes,

and the Constitution does not insulate their communications from employer discipline."  *Id*.  If

an employee speaks pursuant to his official duties, he has no constitutional protection because

the restriction on speech "simply reflects the exercise of employer control over what the

employer itself has commissioned or created."  *Id*.  The Tenth Circuit recognized the shift

brought about by *Garcetti*, writing that "[t]he question for us on *Pickering's* first prong is thus

significantly modified, and we are obliged to ask whether [the public school employee] met her

burden by providing evidence that her expressions were made in her capacity as a citizen and not

pursuant to her 'official duties.'"  *Casey*, 473 F.3d at 1328.

  As discussed in *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F. 3d 1192, 1202-03

(10th Cir. 2007), after *Garcetti,* an analysis of First Amendment claims consists of five prongs:

(1) The court must first determine whether the employee was speaking pursuant to his official

duties; (2) if it is determined that the employee was speaking as a citizen rather than pursuant to

his official duties, the court must then determine whether the subject of the speech is a matter of public concern; (3) if the employee was speaking as a citizen about a matter of public concern, the court must determine "whether the employee's interest in commenting on the issue outweighs the interest of the state as employer"; (4) if the employee's interest outweighs that of the employer, the employee must demonstrate that the speech was a "substantial factor or a motivating factor in [a] detrimental employment action"; and (5) if the employee is able to demonstrate that his speech was a motivating factor in an adverse employment action, "the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech."  The first three of these prongs are to be resolved by the district court, while the last two are ordinarily left in the hands of the trier of fact.  *Id*. at 1203 (citation omitted).

Plaintiff's allegations that Defendant Tellez retaliated against him for engaging in constitutionally protected speech essentially encompass three incidents: (1) expressing his support for Lovato in two departmental meetings; (2) discussing the ongoing investigation in a telephone conversation initiated by Defendant Tellez; and (3) writing an email directly to Defendant Tellez and Deputy Superintendent Tom Savage regarding what he characterized as a security breach in the department's evidence room.[3]  For the reasons discussed below, Plaintiff's

---

[3] Plaintiff's complaint could be broadly read to include, as further instances of protected speech, the complaints he filed with the APS Office of Equal Opportunity Services [Doc. 38, Ex. A] and the APS Human Resources Department [Doc. 38, Ex. C].  However, the Court concludes that these complaints "involved personal grievances about internal employment conditions," and were therefore made by Plaintiff in his capacity as an employee, rather than allegations that the department had "failed to discharge its official responsibilities," which would constitute complaints made in the capacity of a citizen.  *David v. City & County of Denver*, 101 F.3d 1344, 1356-57 (10th Cir. 1996).  Because of this, Plaintiff's letters of complaint do not involve matters of public concern, and therefore do not constitute protected speech.  *See id.*

First Amendment claim against Defendant Tellez fails.

Under the first prong of the *Garcetti* analysis, the Court must initially determine whether Plaintiff engaged in any of these incidents of speech pursuant to his official duties. The Tenth Circuit has defined this test as follows: if a public employee "engages in speech during the course of performing an official duty and the speech reasonably contributes to or facilitates the employee's performance of the official duty, the speech is made pursuant to the employee's official duties" and is not protected by the First Amendment. *Brammer-Hoelter*, 492 F.3d at 1203.

The email that Plaintiff wrote describing what he believed to be a security breach in the evidence room is a clear example of speech made pursuant to his official duties. Although ensuring the security of the evidence room was not one of Plaintiff's official duties at the time he wrote the email, "[a]n employee's official job description is not dispositive...because speech may be made pursuant to an employee's official duties even if it deals with activities that the employee is not expressly required to perform." *Id.* In this manner, the case of *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 693-94 (5th Cir. 2007) as cited by the *Brammer-Hoelter* court, 492 F.3d at 1203, n.5 is instructive. *Williams* concerned a high school's athletic director who wrote letters to the school's office manager and principal alleging financial improprieties regarding certain athletic accounts. The Fifth Circuit found that the athletic director wrote the letters in the course of performing his job, even though such letters were not part of his official duties, because the accounts that were the subject of his letters played a role in his ability to execute his duties, namely taking students to tournaments and paying their entry fees. Likewise, an email that helps to ensure that the department's evidence room is secure could "reasonably contribute[] to or facilitate[]" Plaintiff's performance of his duties as an APS police officer, and

14

reporting a breach of evidence room security is "generally consistent with 'the type of activities [an APS police officer] was paid to do.'"  *Brammer-Hoelter*, 492 F.3d at 1203 (*quoting Green v. Bd. of County Commr's*, 472 F.3d 794, 801 (10th Cir. 2007)).  "The ultimate question is whether the employee speaks as a citizen or instead as a government employee--an individual acting 'in his or her professional capacity.'"  *Id*. (*quoting Garcetti*, 547 U.S. at 422).  Just as the plaintiff in *Williams* wrote the letters in his professional capacity as an athletic director rather than from his "perspective as a 'father' and 'taxpayer,'" 480 F.3d at 694, so undoubtedly, did Plaintiff write the email to his superiors in his capacity as a police officer rather than as a private citizen.  The email, therefore, does not constitute protected speech.

Similarly, Plaintiff's telephone conversation with Defendant Tellez on January 16, 2007, regarding the status of the internal investigation of Lovato, almost certainly took place in the context of Plaintiff's capacity as a police officer.  Plaintiff describes the call from Defendant Tellez as "inform[ing] Plaintiff of the investigatory measures that had taken place and the investigation process that was expected to occur" and "to deny [Defendant Tellez's] involvement with the incidents that had occurred with Chief Lovato."  Complaint, Doc. 1, at ¶ 22.  There is no evidence that Defendant Tellez called Plaintiff to discuss the ongoing internal investigation simply in Plaintiff's capacity as a private citizen.

Plaintiff alleges, without offering any evidence, that he was reprimanded by Sergeant Sandoval on January 23, 2007 solely because of the telephone conversation he had with Defendant Tellez.  Because Sergeant Sandoval would not specify which conversation constituted a violation of Defendant Tellez's order not to discuss the case, and because he was advised that the reprimand had come from the "higher ups," Plaintiff assumed that the reprimand had to have come on orders from Defendant Tellez as a result of their phone conversation.  However,

15

Plaintiff admittedly violated Defendant Tellez's order not to discuss the investigation at least two other times, during departmental meetings on January 8 and 9.  Even assuming for purposes of deciding this motion that Defendant Tellez was behind the reprimand of Plaintiff a week after the fact for the content of a phone conversation initiated by Defendant Tellez, Plaintiff's claim fails because, as discussed above, the conversation took place in the context of Plaintiff's capacity as a police officer.

Plaintiff's claim concerning the reprimand for the telephone conversation would fail even if the conversation were seen as having occurred in his capacity as a citizen rather than his official capacity, because the subject of the speech was not one of public concern.  Based on the evidence presented, and even assuming that Plaintiff vigorously defended Lovato in his conversation with Defendant Tellez, his claim still fails.

In deciding whether speech implicates a matter of public concern, courts consider "the content, form, and context of a given statement, as revealed by the whole record."  *Connick v. Myers*, 461 U.S. 138, 147-48 (1983).  Speech involves a matter of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community. *See Witham v. Baptist Health Care of Okla., Inc.*, 98 F.3d 581, 583 (10th Cir. 1996) (*citing Connick*, 461 U.S. at 146).  Speech pertaining to internal personnel disputes and working conditions, however, ordinarily does not involve matters of public concern.  *See Gardetto v. Mason*, 100 F.3d 803, 812 (10th Cir. 1996).  Plaintiff has not alleged or demonstrated that his speech in the conversation with Defendant Tellez "disclose[d] any evidence of corruption, impropriety, or other malfeasance on the part of [government] officials." *Dill v. City of Edmond*, 155 F.3d 1193, 1202 (10th Cir. 1998) (discussing the type of speech that concerns matters of public concern).  Nor, considering the context of the conversation, could his speech be

16

considered to have "raised his concerns in a manner reasonably calculated to compel...compliance with the law." *Baca v. Sklar*, 398 F.3d 1210, 1220 (2005). As such, the telephone conversation with Defendant Tellez did not involve a matter of public concern, and does not constitute protected speech.

Plaintiff's remarks made in departmental meetings also do not constitute protected speech. Plaintiff contends that, at a meeting with several departmental officers held on January 8, 2007, he "complained about the manner in which the media was being used to discredit Chief Gil Lovato, and conveyed his support for Gil Lovato." Complaint, Doc. 1 at ¶ 18. The next day, in another meeting with several departmental officers, Plaintiff "expressed his belief that the Department had no intent of returning Chief Gil Lovato back to his employment with the APS Police Department." *Id*. at ¶ 19. Assuming that Plaintiff engaged in his speech as a concerned citizen rather than as part of his duties as a police officer, the speech appears much closer to taking sides in an internal political struggle than an attempt to bring to the public's attention evidence of governmental corruption or malfeasance.[4] The Court finds that complaining to his colleagues about the treatment of his former colleague and offering speculation as to the likelihood of that colleague's future return, without more, does not constitute speech that "sufficiently inform[s] the issue as to be helpful to the public in evaluating the conduct of the government." *Wilson v. Littleton*, 732 F.2d 765, 768 (10th Cir. 1984).

Even if Plaintiff's speech in the departmental meetings touched on a matter of public concern, it is nonetheless unprotected because it fails the *Pickering* balancing test. The test laid

---

[4] In finding that Plaintiff's speech does not qualify as protected, the Court does not consider the fact that it was made during a private meeting in the workplace, rather than in public, to be dispositive. *See Garcetti*, 547 U.S. at 420-21.

out in *Pickering*, still valid after *Garcetti*, requires a court to balance the interests of the employee in making the statements at issue against the interests of the state, as an employer, in promoting workplace efficiency.  In performing the balancing, the statements should "not be considered in a vacuum; the manner, time, and place of the employee's expression are relevant, as is the context in which the dispute arose."  *Rankin v. McPherson*, 483 U.S. 378, 389 (1987). The Supreme Court has "recognized as pertinent considerations whether the statement impairs discipline by superiors or harmony among coworkers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise."  *Id.* (*citing Pickering,* 391 U.S. at 570-73).  Plaintiff made his comments in an internal meeting in the context of an ongoing internal affairs investigation that was causing significant consternation among members of the department.  The comments were in direct violation of the order issued by Defendant Tellez (per Deputy Superintendent Tom Savage) not to discuss matters related to the ongoing investigation.  Given the context in which it was issued, Defendant Tellez's order strikes the Court as perfectly appropriate and well within his rights as Acting Chief.  *See Kelly v. Johnson*, 425 U.S. 238, 246 (1976) (recognizing the need to accord police departments wide latitude in decisions likely to impact "discipline, *esprit de corps*, and uniformity"; *Moore v. City of Wynnewood*, 57 F.3d 924, 934 (10th Cir. 1995) (finding that law enforcement has a "heightened interest in maintaining discipline and harmony among employees").  The fact that Plaintiff was allegedly cursed at and physically threatened by another officer immediately following his remarks is an indication of the tinderbox situation the department found itself in at the time, and further indication that the interest of the state as employer in maintaining discipline, morale, and the integrity of the ongoing investigation outweighed Plaintiff's interest

18

in making his statements, especially given the limited value of Plaintiff's speech in alleging any actual wrongdoing.  Thus, even if it could be considered as pertaining to a matter of public concern, Plaintiff's speech in the two departmental meetings was not protected, and his First Amendment claim fails.[5]

E.    Due Process under the Fifth and Fourteenth Amendments

Plaintiff claims that Defendant Tellez deprived him of his due process rights by "wrongfully subjecting him to disciplinary action and removing him from his original job for illegitimate reasons."  Complaint, Doc. 1 at ¶¶ 82 and 83.  In his Response to Defendant Tellez's motion for summary judgment, Plaintiff clarified his due process claims by specifying that Defendant Tellez violated his rights when Plaintiff was demoted following the investigation into his misuse of the Triple I background investigation system and when Defendant Tellez recommended that Plaintiff be terminated without first notifying him or offering him an opportunity to respond.  *See* Doc. 38 at 20.

Regarding Plaintiff's demotion in the wake of the investigation into his misuse of the Triple I background check system, Plaintiff does not dispute that his police commission was revoked by BCSD Sheriff Darren White, nor does he allege that this revocation was in any way the result of actions by Defendant Tellez.  Plaintiff is not contesting the revocation of his commission by Sheriff White, but rather the action taken by Defendant Tellez after the

---

[5] Although Defendant Tellez couched his motion for summary judgment on this claim in terms of qualified immunity, the Court has no need to undertake the qualified immunity analysis where it has found that no constitutional violation occurred as a threshold matter.  *See Petersen v. Farnsworth*, 371 F.3d 1219, 1224 (10th Cir. 2004) (declining to consider defendant's entitlement to qualified immunity where no constitutional violation occurred).

revocation to place him in a position that did not require a police commission.  Plaintiff has failed to identify any particular process that was required to be followed before he could be temporarily reassigned as a result of having his police commission revoked.  The Court finds that Defendant Tellez is entitled to qualified immunity for his actions in temporarily reassigning Plaintiff to a position that did not require a police commission following the revocation of his commission by an unrelated party.

Plaintiff also claims that his procedural due process rights were violated when Defendant Tellez sent a memorandum to the Administrative Manager for APS Human Resources recommending his termination without notifying him or affording him the opportunity to respond.  Presuming that Plaintiff possessed a constitutionally protected property interest in continued employment, he is correct in his assertion that due process requires that his employment not be terminated without a pre-termination opportunity to respond to charges.  *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).   However, Plaintiff has failed to identify any legal requirement for notice and an opportunity to respond prior to a supervisor making a recommendation of termination to the Human Resources department; a recommendation that was not followed.  Instead, Plaintiff was restored to his prior position mere days after the letter sent by Defendant Tellez recommending his termination.  The Court finds that Defendant Tellez is entitled to qualified immunity for his actions in sending a letter to the Human Resources department recommending that Plaintiff be terminated for his misuse of the Triple I system.

F.     Freedom of Association under the First Amendment

Plaintiff claims that his right to freedom of association was violated by, among others, Defendant Tellez, in that he was wrongfully disciplined because of his association with former

20

Chief Gilbert Lovato.  Complaint, Doc. 1 at ¶¶ 88 and 89.  In his Response to Defendant Tellez's motion for summary judgment, Plaintiff appears to argue that he was retaliated against because of his political affiliation and/or beliefs.  Doc. 38 at 21.  However, the relationship and association that Plaintiff had with Lovato is not the type of association that the First Amendment protects.  *See Copp v. Unified School District No. 501*, 882 F.2d 1547, 1551 (10th Cir. 1989).

  *Copp* concerned a plaintiff who had been a high school's head custodian and who was reassigned and demoted following the transfer of his close friend, the school's principal, who was the subject of a sexual harassment claim.  Prior to the principal's transfer, the plaintiff appeared at a public Board of Education meeting to speak in favor of his friend and to express his opposition to the proposed transfer.  Three weeks after the principal's transfer, the plaintiff was moved to a new position at the district's smallest school that required more physical labor and had fewer supervisory duties than his previous position, which had been at the district's largest school.  In addition, the plaintiff's new position paid him hourly, as opposed to his previous position, which had been salaried.  The Tenth Circuit found that the plaintiff did not have a viable freedom of association claim.  Although the court agreed that the plaintiff was transferred and demoted at least partly because of his relationship with the principal, it held that the First Amendment does not protect that type of association from governmental action.  The *Copp* court cited *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984), for the proposition that "[t]he right to associate protects an individual's decision to 'enter into and maintain certain intimate human relationships,'" but noted that "[i]n general, those protected relationships have involved familial settings not present in the case before us," and held that the plaintiff possessed no First Amendment right to associate generally with the principal.  The Court thus finds that the law was not clearly established that freedom of association extends to

an employee's support for his former supervisor, and that Defendant Tellez should be granted

qualified immunity on this claim.

<u>**CONCLUSION**</u>

**IT IS THEREFORE ORDERED** that Defendant Tellez's *Motion for Summary*

*Judgment on Qualified Immunity* [Doc. 26] is **GRANTED**.


_____

**UNITED STATES DISTRICT JUDGE**